# In the United States Court of Federal Claims

No. 11-778C
(Filed June 11, 2012)

* * * * * * * * * * * * * * * * * * * * * * * *

**ADMARK KOREA LIMITED,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * *

Contracts; subject matter jurisdiction; RCFC 12(b)(1), (6), motion to dismiss; statute of limitations, 28 U.S.C. § 2501 (2006); accrual suspension rule; implied-in-fact contract, 28 U.S.C. § 1491(a)(1).

Cyrus E. Phillips IV, Arlington, VA, for plaintiff.

Sarah M. Bienkowski, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for defendant. Major John J. Gowel, Army General Litigation Branch, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court after argument on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The issues for decision are whether the claim of an offeror challenging the award of a concession contract is time barred and whether the damages that the frustrated contractor seeks in excess of bid proposal and preparation costs are recoverable.

## FACTS

The following facts are taken from plaintiff's Amended Complaint. Admark Korea ("plaintiff") was awarded a concession contract in August 1998 by the Army & Air Force Exchange Service ("AAFES") to lease mobile phones and to sell wireless telephone accessories and pre-paid airtime cards from AAFES facilities at eight military bases in the

Republic of Korea. Am. Compl. filed Nov. 22, 2011, ¶ 11. On May 7, 1999, AAFES issued a solicitation for a successor concession contract and set June 4, 1999, as the date on which the proposals were due. Id. ¶ 13. The successor concession contract would be for a two-year period of performance, beginning on August 29, 1999, with options that could extend the contract an additional three years. Id. ¶ 9. AAFES indicated that it would make its award to the "responsive, responsible Offeror offering the highest concession fee to AAFES on total gross revenues generated." Id. Plaintiff timely submitted its proposal on June 4. Id. ¶ 14. However, on July 19, 1999, AAFES notified plaintiff that the successor contract had been awarded to Samsung Rental Company ("Samsung"). Id. ¶ 15. Plaintiff, by its president, Son Hee Chung, challenged this award on August 12, 1999, but did not prevail in those proceedings. 1/ Id. Samsung then performed under the successor concession contract for the entire contractual term. Id.

On January 24, 2007, Stars and Stripes, a military news periodical, publicly disclosed that Jeong Gi-hwan, Samsung's principal, had bribed AAFES employees in order to obtain award of AAFES concession contracts. Id. ¶ 8. Plaintiff first learned of this public disclosure on January 25, 2007. Id. Based on this disclosure, plaintiff alleges that Clifton Choy, AAFES's then-Pacific Region Services Business Manager, filled in information on Samsung's proposal sheet to insure that Samsung offered the highest concession fee and that Jeong Gi-hwan paid Mr. Choy $100,000.00 and a five-percent monthly kickback from the successor concession contract proceeds in order to secure award of the contract. Id. ¶¶ 17, 18.

Plaintiff commenced suit in the Court of Federal Claims on November 18, 2011, and filed its Amended Complaint on November 22, 2011. Plaintiff alleges that AAFES, through the actions of Mr. Choy, breached an implied-in-fact contract with plaintiff and asks for both expectation and restitution damages in the amounts of $8,355,852.00 and $445,000.00, respectively. On January 17, 2012, defendant moved to dismiss plaintiff's complaint under both RCFC 12(b)(1) and 12(b)(6). Plaintiff responded on February 17, 2012, and defendant replied on March 5, 2012. The court allowed plaintiff to file a sur-reply on March 22, 2012, addressing particular documents that were included in defendant's reply. See Order entered Mar. 14, 2012.

---

1/ As noted by defendant, plaintiff has not identified the forum in which it pursued this challenge.

## DISCUSSION

I. Standards

1. Subject matter jurisdiction pursuant to RCFC 12(b)(1)

Defendant levies the objection that plaintiff's asserted claims are outside the court's jurisdiction. Jurisdiction must be established before the court may proceed to the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998). Courts are presumed to lack subject matter jurisdiction unless it is affirmatively indicated by the record; therefore, it is a plaintiff's responsibility to allege facts sufficient to establish the court's subject matter jurisdiction. Renne v. Geary, 501 U.S. 312, 316 (1991); DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction."). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. . . . [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citation omitted); accord M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010). However, when a federal court hears a jurisdictional challenge, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id.

2. Failure to state a claim

Defendant alternatively moves pursuant to RCFC 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. See RCFC 12(b)(6). "The purpose of [RCFC 12(b)(6)] . . . is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail . . . ." Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). The court's task in considering a motion to dismiss for failure to state a claim is to "determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer, 416 U.S. at 236). "A dismissal for failure to state a claim . . . is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995).

In resolving a RCFC 12(b)(6) motion, the court must assess whether plaintiff's complaint adequately states a claim for relief under the implicated statute and regulations and whether plaintiff has made "allegations plausibly suggesting (not merely consistent with)" entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007); see also Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009) (rephrasing Twombly standard as requiring "a claim to relief that is plausible on its face"); accord Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009); McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356-57 (Fed. Cir. 2007). Although plaintiff's factual allegations need not be "detailed," they "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the [counterclaims] are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). Plaintiff "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354 (Fed. Cir. 2010) (quoting Twombly, 550 U.S. at 555 (alteration in original) (citation omitted) (internal quotation marks omitted)). "At the same time, a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Twombly, 550 U.S. at 555). The court thus "'accept[s] as true all factual allegations in the complaint, and . . . indulge[s] all reasonable inferences in favor of the non-movant'" to evaluate whether plaintiff has stated a claim upon which relief can be granted. Chapman Law Firm, 490 F.3d at 938 (omission in original) (quoting Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

II. Whether plaintiff's claim is time barred

The applicable statute of limitations is 28 U.S.C. § 2501 (2006), which states, "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Generally, "[a] claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009). Thus, a plaintiff must file a complaint with this court within six years of the occurrence of the events fixing its claim or else risk dismissal for lack of jurisdiction. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008) (recognizing that compliance with the statute of limitations is a jurisdictional requirement); see also FloorPro, Inc. v. United States, No. 2011-5116, 2012 WL 1948997, at *4 (Fed. Cir. May 31, 2012).

However, a plaintiff may be entitled to utilize the accrual suspension rule, which, if applicable, affords a plaintiff a larger window in which to file its claim. According to the United States Court of Appeals for the Federal Circuit, "accrual of a claim against the United

States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (citation omitted) (internal quotation marks omitted). As more recently articulated in Holmes v. United States, 657 F.3d 1303 (Fed. Cir. 2011), a plaintiff may claim the benefit afforded by the accrual suspension rule if it can "'either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it [can] show that its injury was "inherently unknowable" at the accrual date.'" Id. at 1317 (quoting Young, 529 F.3d 1384 (citation omitted) (internal quotation marks omitted)). When examining whether an injury was "inherently unknowable," courts focus on the plaintiff's knowledge, or lack thereof, of the facts underlying the claim. See Young, 529 F.3d 1384-85 ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date."); see also United States v. Kubrick, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment."); Catawba Indian Tribe of South Carolina v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (declining to suspend accrual date when "all the relevant *facts* were known. It was the meaning of the law that was misunderstood").

Arguing in support of its RCFC 12(b)(1) motion that plaintiff's claim is time barred, see Def.'s Br. filed March 5, 2012, at 3-6, defendant asserts that the events leading to the accrual of the claim occurred during mid- to late-1999, at which point plaintiff possessed sufficient information to suspect Mr. Choy of foul play, see id. at 4 ("Admark Korea had knowledge of these allegations of corruption concerning Mr. Choy and underlying this complaint shortly after the award of the contract in 1999 . . . ."). 2/ Because plaintiff delayed filing this claim for thirteen years, defendant argues that this court no longer has jurisdiction and the complaint should be dismissed. Plaintiff rejoins that it should be entitled to protection under the accrual suspension rule because the situation presented falls under the category of being "inherently unknowable," such that the actual accrual date for the claims should be January 24, 2007, when Stars and Stripes published its article detailing the bribery scam run by Samsung's principal and Mr. Choy. See Pl.'s Br. filed Feb. 17, 2012, at 13.

Defendant counters that plaintiff should not be allowed to utilize the accrual suspension rule because it was aware of the facts surrounding the tainted transactions and was aware of Mr. Choy's reputation for taking bribes. See Def.'s Br. filed Mar. 5, 2012, at 3-6. Defendant points to plaintiff's complaint, plaintiff's justifications for protesting the award of the concession contract to Samsung written in 1999, as well as to a Victim Impact

---

2/ Plaintiff itself concedes that the accrual date of the present action occurred on July 19, 1999. Pl.'s Br. filed Mar. 22, 2012, at 1.

Statement submitted by Ms. Chung's ex-spouse and ex-business partner in a criminal case against Samsung's principal. Id. Defendant argues that these indicate that plaintiff was aware of the general facts and on notice that some procurement violations likely occurred, thereby refuting plaintiff's present claim that the facts were "inherently unknowable." Id. Further, defendant points to correspondence with plaintiff's then-legal counsel in order to demonstrate that plaintiff made a strategic decision not to pursue these allegations much earlier. See id. at 4-5.

In response, plaintiff argues that, although its principals indeed were suspicious early on about the circumstances of the award to Samsung, plaintiff lacked sufficient information to proceed. See Pl.'s Br. filed Mar. 22, 2012, at 7-8. In order to survive a motion to dismiss, plaintiff recognizes that it must plead more than "formulaic recitations, speculations, and conclusory statements," which is all that were available to it until the Stars and Stripes article reported publically the bribery scheme. Id. at 6. Plaintiff explains that, although suspicious, the fact of the bribe paid to Mr. Choy was inherently unknowable "because this suspicion alone would not have been sufficient to rebut the presumption of regularity" that is afforded to government employees until this information was made public in January 2007. See id. at 7. Because the information surrounding the facts underlying plaintiff's claim was inherently unknowable prior to January 2007, plaintiff reasons that the accrual suspension rule should be applied making the effective date of claim accrual 2007 rather than 1999, meaning that plaintiff filed this action within the required six-year window afforded by statute. Id. at 8.

Although this court has great sympathy for the difficult situation plaintiff faced in having to deal with such rampant corruption within AAFES, plaintiff's argument that it should be afforded protection under the accrual suspension rule because the underlying facts were inherently unknowable is unpersuasive based on the record. When evaluating plaintiff's arguments, it must be noted that this court is bound to apply the accrual suspension rule "strictly and narrowly." Martinez v. United States, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc) (citation omitted) (internal quotation marks omitted). Given this reluctance to apply the rule, plaintiff cannot support its contention of complete ignorance of the relevant facts until 2007. 3/

---

3/ Plaintiff misunderstands the requirements for the application of the accrual suspension rule. Plaintiff argues that "[t]he basis for this Civil Action was 'inherently unknowable' until the Claim for money damages could first be adequately pled, and this did not happen until January 24th, 2007 . . . ." Pl.'s Br. filed Mar. 22, 2012, at 10. Plaintiff seems to be grafting a more lenient standard onto the accrual suspension rule by invoking pleading requirements as the hurdle that must be cleared before the statute of limitations begins to run.

First, it must be noted that plaintiff alleges in its amended complaint that Mr. Choy was "an AAFES employee widely known to be corrupt and widely known for taking bribes in return for guaranteed concession Contract awards." Am. Compl. ¶ 16. The court cannot simultaneously overlook that language and endorse plaintiff's claims that this behavior by Mr. Choy was inherently unknowable. Unfortunately for plaintiff, its acknowledgment that these corrupt activities were "widely known" strains credulity to find that plaintiff was completely unaware of this corrupt behavior.

In fact, the record affirmatively shows that plaintiff was knowledgeable about these activities—particularly respecting the award of this particular contract. Because this issue involves contested jurisdictional facts, the court looks to two documents submitted by the parties in order to resolve this dispute of whether or not the facts were "inherently unknowable": (1) plaintiff's formal appeal to Major General Barry D. Bates, Commander of AAFES at the time, dated August 12, 1999; and (2) a Victim Impact Statement, dated June 25, 2009, submitted by Martin H. Cohen, the ex-spouse and ex-business partner of plaintiff's president, Ms. Chung, to the United States District Court in Dallas, Texas, for the judge's consideration in passing sentence on Mr. Gi-hwan after his conviction for bribery. Beginning with the appeal letter to General Bates, language throughout hinted at something more sinister than the stated basis of the protest. For example, in the appeal letter, Ms. Chung reported "[a] conspiracy to remove Admark and replace it with Samsung Rental Company was conceived and planned by Mr. Clifton Choy . . . . [and the] conspiracy was driven either by corruption or by discrimination." Pl.'s Br. filed Feb. 17, 2012, App. at 71. Ms. Chung further stated that she believed "the reason why [AAFES] did not investigate thoroughly is because they were part of a conspiracy led by Mr. Choy to replace Admark with Samsung" and that "[a] clear pattern of discrimination has emerged here and it is obvious that there was a definite determination by [AAFES officials] to replace Admark with Samsung well before the bidding actually started." Id. at 74. Lastly, Ms. Chung charged that "Mr. Choy wants to insure that Admark cannot continue to operate and compete against the company that he has manipulated into winning this contract." Id. at 82.

Plaintiff attempts to diminish any potential significance of these statements by arguing that "a 'conspiracy' is not a bribe . . . [and that] [t]he sixteen-page Agency Protest filed by

---

3/ (Cont'd from page 6.)

This court looks only to whether or not plaintiff had knowledge of the underlying facts—in this case the corruption and bribes involving Mr. Choy and AAFES. See generally FloorPro, 2012 WL 1948997, at *4 (affirming that jurisdictional six-year limitations period cannot be extended even if justified on equitable grounds).

[plaintiff] asserts neither that a bribe was paid nor that the concession fees offered by Samsung were not independently determined by Samsung." Pl.'s Br. filed Mar. 22, 2012, at 3. While plaintiff might be drawing too fine a point on the definition of "conspiracy"—it is certainly possible to have a conspiracy centered on the provision and acceptance of bribes—plaintiff's point is well taken that the language of the agency protest is quite vague and does not itself reveal any specific knowledge about a particular series of events that tainted this particular procurement. Given that this was an adversarial proceeding and plaintiff's frustrations were palpable, it is possible that Ms. Chung's language was mere hyperbole in order to induce the general to see the merits of plaintiff's challenge. This document, by itself, would not be sufficient to reveal the extent of plaintiff's knowledge.

Unfortunately for plaintiff, the second document, Mr. Cohen's Victim Impact Statement, not only specifically addressed the extent of plaintiff's knowledge at the time, but also revealed exactly what insinuations plaintiff was trying to impart in its agency appeal letter. The most pertinent section of the Victim Impact Statement stated, as follows:

> Based on AAFES contract guidelines and rules we had the right to protest the contract awarding. We did this, however our protest was received and reviewed by Choy and "his group[.]" Our protest was obviously denied. We were then informed that we had one week to submit an official appeal . . . . We hired Haynes & Boone law firm in Dallas to prepare the appeal and to represent us.
>
> You can imagine that at this time we were very emotionally upset, frustrated and angry. By this time our "sources" had informed us that Choy had negotiated a deal with Jeon of SSRT to receive a $100,000 bribe payment and a 5% per month kickback on future gross sales from SSRT. We wanted to accuse Choy and his group of corruption and bribery and abuse of his position and authority as an AAFES executive. However, we had no real proof of his crimes and our attorneys at Haynes & Boone in Dallas strongly advised us not to make these accusations or innuendos for fear of Choy and AAFES counter suing us for slander and defamation of character. That is why our formal appeal did not blatantly accuse Choy of bribery and corruption. However, these accusations were clearly communicated in my letter dated August 12th, 1999, addressed to Maj. General Barry D. Bates, Commander and CEO of AAFES in Dallas, Texas. In hind sight, I regret not accusing Choy in the appeal and I believe our appeal was too weak in its wording and why I believe it was unsuccessful.

Pl.'s Br. filed Feb. 17, 2012, App. at 99.  This concession unequivocally demonstrates that plaintiff was aware of the underlying facts giving rise to its present claim.  Mr. Cohen indicated that, although vaguely worded, the numerous mentions of "conspiracy" in the agency appeal letter were intentional and used in order to convey exactly that.  Additionally, Mr. Cohen stated that by August 1999 plaintiff was aware of the exact nature of the bribe accepted by Mr. Choy.  Grasping at straws, plaintiff now attempts to argue that this disclosure should be understood only as reflecting plaintiff's knowledge and state of mind at the time of the Victim Impact Statement—two years after the publication of the Stars and Stripes article.  See Pl.'s Br. filed Mar. 22, 2012, at 10.  The court must reject plaintiff's argument as belied by the very language of the Victim Impact Statement, which uses the term "[b]y this time" in reference to August 1999.  Given this disclosure, this court finds that plaintiff was aware of the underlying facts as early as 1999 and therefore cannot claim protection under the accrual suspension rule.

Moreover, this court has been unable to divine, and was not presented at argument, a reason as to why the running of the statute of limitations should be suspended until the publication of the Stars and Stripes article detailing Mr. Gi-hwan's illicit activities in regard to a completely different concession contract.  Plaintiff has attempted to state that this disclosure somehow provided "better proof" of Mr. Choy's fraudulent behavior, Pl.'s Br. filed February 17, 2012, at 13, but, in actuality, this disclosure did nothing to enhance or weaken any claim that plaintiff may have had against Mr. Choy and AAFES as a result of their handling of this contract.  To learn that Mr. Choy was involved in bribes on other, separate contracts does not speak at all to the situation at issue.  It appears that plaintiff may have been encouraged to see another prosecution brought against the corrupt actors with whom it had to deal, but this comfort and "safety in numbers" mentality is an insufficient ground on which to apply the accrual suspension rule.

Although unfortunate for plaintiff, this case does present a good example as to why courts are wary of extending statutes of limitation.  Plaintiff initially was concerned about its likelihood of success against Mr. Choy and AAFES and feared that it would be subjected to reprisals should it pursue its claim closer to the contract award date in 1999.  However, fraud claims pose challenges to success due to the nature of the claims.  It is often the case that a plaintiff must plead the bare minimum in its complaint to survive a motion to dismiss in order to gain discovery so that it can further investigate the matter.  Here, plaintiff was suitably aware of the corrupt conduct of Mr. Choy that it could have elected to go forward with its action.  It made the choice, based on the advice of counsel, not to proceed at that time.  While the publication of the Stars and Stripes article might have fortified plaintiff's resolve in that other instances of fraud by the same actors were revealed, this publication had no legal effect on plaintiff's claim.  Moreover, plaintiff continued to delay for an additional four years before bringing suit in the Court of Federal Claims, during which time the most

important actor in this saga, Mr. Choy, died. Statutes of limitations are in place so that parties do not unnecessarily delay the bringing of claims because the delay itself can lead to the erosion of memories and the unavailability of pertinent evidence. Plaintiff, although uncertain as to the outcome, could have brought its claims against Mr. Choy within the six-year window after the concession contract was awarded to Samsung in 1999. This court does not opine on the likelihood of plaintiff's chances of success at that time, but Mr. Cohen's assertions in his Victim Impact Statement suggest that plaintiff had as much knowledge of the fraudulent activities in 1999 as it does now. Therefore, plaintiff cannot invoke the accrual suspension rule, and its claim is barred for having been brought beyond the applicable six-year statute of limitation.

III. Whether plaintiff may recover damages in excess of bid preparation and proposal costs

As an additional matter, the court also notes that defendant is correct that plaintiff would have been limited solely to bid preparation and proposal costs. See Def.'s Br. filed Mar. 5, 2012, at 6-7. At oral argument plaintiff argued that the excess in inventory that plaintiff had compiled, as the incumbent, to demonstrate the necessary abilities required by the RFP should be included as bid preparation and proposal costs. Although plaintiff made an interesting argument as to what fairly could be classified as bid preparation and proposal costs, this court has ruled that "[e]xpenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids." Lion Raisins, Inc. v. United States, 52 Fed. Cl. 629, 631 (2002) (citations omitted). Plaintiff may not recover the value of the inventory that it possessed upon losing the concession contract either as restitution damages or as bid preparation and proposal costs. Neither does the definition of bid preparation and proposal costs include the expectancy damages that plaintiff seeks for lost profits. As such, plaintiff failed to plead any recoverable damages, and, were the Amended Complaint not jurisdictionally deficient, the court would grant defendant's motion to dismiss under Rule 12(b)(6).

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of the Court shall dismiss plaintiff's complaint for lack of subject matter jurisdiction without prejudice.

**IT IS SO ORDERED**.

No costs.

/s/ Christine O.C. Miller

**Christine Odell Cook Miller**
Judge